IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COOKEVILLE DIVISION

| | |
|---|---|
| LUXOTTICA GROUP, S.p.A., an Italian corporation, and OAKLEY, INC., a Washington corporation,<br><br>    Plaintiffs,<br><br>v.<br><br>111 PIT STOP, INC., *et al.*,<br><br>    Defendants. | Case No. 2:19-cv-00015 |

## MEMORANDUM

Pending is Plaintiffs Luxottica Group, S.p.A. and Oakley, Inc.'s Motion for Entry of Default Judgment Pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure as to Defendants 111 Pit Stop, Inc. and Pareshbai Patel. (Doc. No. 27). Defendants have not filed a response to Plaintiff's motion, and the deadline to do so has passed.

### I. Procedural Requirements for Entry of Default Judgment

Plaintiffs filed their complaint against Defendants on March 7, 2019. (Doc. No. 1). Plaintiffs properly served Defendants with process and, after Defendants failed to plead or otherwise defend this action, the Clerk of Court entered default against 111 Pit Stop, Inc. on May 22, 2019 (Doc. No. 15) and against Pareshbai Patel on June 28, 2019 (Doc. No. 19). Defendants have not taken any action to set aside the entry of default.

Because neither Defendant has made an appearance in this case, the notice requirement of Federal Rule of Civil Procedure 55(b) is not triggered. Plaintiffs have submitted an affidavit stating that Pareshbai Patel is not in the military service and is not an infant or incompetent person. (Doc. No. 18, Attach. 2 at 1-2). Therefore, Plaintiffs meet the procedural requirements for obtaining entry of default judgment.

1

## II. Facts

Upon entry of default, well-pleaded allegations relating to liability are taken as true. *In Re: Family Resorts of Am., Inc.*, 972 F.2d 347, *4 (6th Cir. 1992); *Kelley v. Carr*, 567 F. Supp. 831, 840 (W.D. Mich. 1983) (citing *Thomas v. Wooster*, 114 U.S. 104 (1885)) ("On a motion for entry of default judgment…, allegations of fact in the complaint are taken as true unless they are contradictory on the face of the document."). Although the decision to grant or deny a request for default judgment lies within the court's sound discretion, if the allegations in a complaint are sufficient to support a finding of liability as to the defendant(s), the court should enter judgment. *Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 848 (E.D. Mich. 2006).

The facts alleged in the complaint are as follows: Plaintiff Luxottica Group S.p.A. ("Luxottica Group") is a corporation duly organized under the laws of Italy with its principal place of business in Milan, Italy. (Doc. No. 1, Compl., Parties, ¶ 1).[1] Plaintiff Oakley, Inc. ("Oakley") is a corporation organized and existing under the laws of the State of Washington, having its principal place of business at One Icon, Foothill Ranch, California. (*Id*. ¶ 2). Oakley is an indirect, wholly owned subsidiary of Luxottica. (*Id*.)

Luxottica Group is engaged in the manufacture, marketing and sale of premium, luxury and sports eyewear throughout the world. (*Id*. at Factual Allegations, Sec. A, ¶ 1). Luxottica Group's proprietary brands include Ray-Ban, the world's most famous sun eyewear brand, which prominently displays its famous federally registered Ray-Ban trademarks. (*Id*. ¶ 4). Plaintiffs hold registrations for their respective trademarks with the United States Patent and Trademark Office in connection with the advertisement and sale of their products, including Ray-Ban (collectively

---

[1] Due to a drafting error, the complaint does not contain consecutive paragraph numbering. Therefore, for ease of reference, the Court will refer to the Section headings when referencing a particular paragraph number and allegation of the complaint.

referred to herein as "Ray-Ban Trademarks"). (*Id*. at Sec. A, ¶ 6 and Sec. B., ¶ 5). Plaintiff's Ray-Ban Trademarks are identified below:

| Registration Number | Trademark | Good and Services | Per Type of Counterfeit Good Infringed |
|---|---|---|---|
| 650,499 | Ray-Ban | For: sunglasses, shooting glasses, and ophthalmic lenses in class 9. | Lens |
| 1,080,886 | RAY-BAN | For: ophthalmic products and accessories – namely, sunglasses; eyeglasses; spectacles; lenses and frames for sunglasses, eyeglasses, spectacles in class 9. | Hang Tag |
| 3,522,603 | Ray-Ban | For: sunglasses, eyeglasses, lenses for eyeglasses, eyeglasses frames, cases for eyeglasses in class 9. | Lens<br>Hang Tag |

Luxottica Group has expended substantial time, money, and other resources in developing, advertising, and otherwise promoting the Ray-Ban Trademarks. (Doc. No. 27, Attach. 1 ¶ 6). As a result, products bearing the Ray-Ban Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high quality products sourced from Luxottica Group, and have acquired strong secondary meaning. (*Id*.) Luxottica Group continues to invest substantial money in promoting its products and services offered under its brands, including the Ray-Ban Trademarks. (*Id*.)

Oakley is an internationally recognized manufacturer, distributor and retailer of sports eyewear, apparel, footwear, outerwear, jackets, accessories and other merchandise, all of which prominently display its famous, internationally recognized and federally registered Oakley trademarks. (*Id*., Sec. B., ¶¶ 1 and 3). Oakley products have become enormously popular and even iconic, driven by Oakley's arduous quality standards and innovative design. (Doc. No. 27, Attach.

3

1 ¶ 8). Oakley has expended millions of dollars annually in advertising, promoting and marketing featuring the Oakley trademarks. (*Id*.) Among the purchasing public, authentic Oakley products are instantly recognizable as such. (*Id*.) In the United States and around the world, the Oakley brand has come to symbolize high quality, and Oakley products are among the most recognizable eyewear, headwear, footwear, outerwear, jackets and apparel in the world. (*Id*.) Oakley owns and has used a variety of federally registered trademarks in connection with the advertisement and sale of its products, including Oakley. (*Id*. ¶ 10). Those trademarks are identified below (hereinafter collectively referred to as the "Oakley Trademarks"):

| Registration Number | Trademark | Good and Services | Per Type of Counterfeit Good Infringed |
|---|---|---|---|
| 1,984,501 | | For: protective and/or anti-glare eyewear, namely sunglasses, goggles, spectacles and their parts and accessories, namely replacement lenses, earstems, frames, nose pieces and foam strips in class 9. | Lens |
| 3,151,994 | | For: protective eyewear, namely spectacles, prescription eyewear, anti-glare glasses and sunglasses and their parts and accessories, in class 9. | Frame |
| 1,980,039 | | For: protective and/or anti-glare eyewear, namely sunglasses, goggles, spectacles and their parts and accessories, namely replacement lenses, earstems, frames, nose pieces and foam strips in class 9. | Hang Tag Frame |
| 1,902,660 | | For: class 9 protective and/or anti-glare eyewear, namely sunglasses, goggles, spectacles and their parts and accessories, namely replacement lenses, earstems, frames, nose pieces and foam strips; cases specially adapted for protective and/or anti-glare eyewear and their parts and accessories. | Lens |

4

Case 2:19-cv-00015   Document 29   Filed 07/27/20   Page 4 of 14 PageID #: 116

| | | | |
|---|---|---|---|
| 3,331,124 | | For: class 9 protective eyewear, namely spectacles, prescription eyewear, anti-glare glasses and sunglasses and their parts and accessories, namely replacement lenses, frames, earstems, and nose pieces; cases specially adapted for spectacles and sunglasses and their parts and accessories. | Hang Tag |

111 Pit Stop, Inc. is a corporation organized and existing under the laws of the State of Tennessee, having a principal place of business at 1200 Browns Mill Rd., Cookeville, TN 38506. (*Id*., Parties, ¶ 3). 111 Pit Stop, Inc. owns and operates a Sunoco gas station. (*Id*.) Pareshbai Patel owns the real property upon which 111 Pit Stop, Inc. operates. (*Id*. ¶ 5). 111 Pit Stop, Inc. has advertised, offered to sell, and sold sunglasses bearing counterfeits of one or more of Plaintiffs' Ray-Ban and Oakley Trademarks (the "Counterfeit Product") at its Sunoco gas station convenience store. (*Id*. ¶ 3 and Section C, ¶¶ 1-3). Pareshbai Patel materially contributed to the sale of the Counterfeit Product by allowing these infringing activities to take place on his premises notwithstanding his actual and constructive knowledge of 111 Pit Stop, Inc.'s infringing activities. (*Id*., Section C, ¶ 9).

At all relevant times, 111 Pit Stop, Inc. and Pareshbai Patel had full knowledge of Plaintiffs' trademarks, including their exclusive right to use and license their respective intellectual property and the goodwill associated therewith. (*Id*., Factual Allegations, Section A, ¶¶ 8 and 9, Section B, ¶¶ 7 and 8, Section C, ¶ 7). 111 Pit Stop, Inc. and Pareshbai Patel have no license, authority, or other permission from Plaintiffs to use any of their trademarks in connection with the advertising, promoting, distributing, displaying, selling and/or offering for sale of the Counterfeit Product. (*Id*. ¶ 4). Given Defendants' copying of one or more of Plaintiffs' trademarks, authentic goods bearing Plaintiffs' trademarks and Defendants' goods are indistinguishable to consumers, both at the point of sale and post-sale. (*Id*., Section C, ¶¶ 5, 6, and Count I, ¶ 3).

On November 24, 2018, Luxottica's Group's investigator purchased one pair of sunglasses bearing counterfeits of the Ray-Ban Trademarks and one pair of sunglasses bearing counterfeits of Oakely's Trademarks for a total price of $56.53 at the Sunoco station located at 1200 Browns Mill Road., Cookeville, TN 38506.  (Doc. No. 1, Compl., Section C, ¶ 2; ¶ 13). According to Jason Groppe , who performs and/or supervises direct investigations related to infringement of Ray-Ban and Oakley's Trademarks,  review of the sunglasses reveals that 111 Pit Stop, Inc. and Pareshbai Patel, without authorization from Luxottica Group, used spurious designations that are identical to, or substantially indistinguishable from the three (3) federally-registered Ray-Ban Trademarks on the following types of goods: frames, lenses, and hang tags. A total of four (4) Ray-Ban Trademarks have been counterfeited on a per mark per type of good infringed basis.  (Groppe Decl. ¶ 16)   Further, 111 Pit Stop, Inc. and Pareshbai Patel, without authorization from Oakley, used spurious designations that are identical to, or substantially indistinguishable from the five (5) federally-registered Oakley Trademarks on the following types of goods: frames, lenses, and hang tags. A total of six (6) Oakley Trademarks have been counterfeited on a per mark per type of good infringed basis.  (*Id*. ¶ 17).

## III. Defendants' Liability

After default has been entered, the Court may enter default judgment against the defendant(s) with or without a hearing. Fed. R. Civ. P. 55(b). Based on the well-pleaded factual allegations in the complaint, the Court concludes that there is a sufficient basis for determining Defendants' liability without the need for a hearing.

The complaint alleges direct trademark infringement by 111 Pit Stop, Inc. and the contributory liability of Pareshbai Patel.

A trademark is "any word, name, symbol, or device . . . used by a person . . . to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by

others and to indicate the source of the goods, even if that source is unknown." 15 U.S.C. § 1127. The Lanham Act provides liability for trademark infringement if, without the consent of the registrant, a defendant uses "in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark: which is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114. To recover on a federal trademark infringement claim, a plaintiff must establish that (1) it owns the registered trademark; (2) the defendant used the mark in commerce; and (3) the use was likely to cause confusion. *See Hensley Mfg. v. ProPride, Inc*., 579 F.3d 603, 609 (6th Cir. 2009). The "touchstone of liability" for trademark infringement under 15 U.S.C. § 1114 "is whether defendant's use of the disputed mark is likely to cause confusion among consumers regarding the origin of the goods offered by the parties." *The Ohio State Univ. v. Skreened Ltd*., 16 F. Supp.3d 905, 910 (S.D. Ohio 2014) (quoting *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr*., 109 F.3d 275, 280 (6th Cir. 1997)).

Counterfeiting, under 15 U.S.C. § 1114, is a subset of infringement; even if a mark is infringing, it is not necessarily counterfeit. *Id*. at 910 (citations omitted). "To recover on a federal trademark counterfeiting claim, a plaintiff must show that: (1) the defendant infringed a registered trademark in violation of 15 U.S.C. § 1114; and (2) the defendant intentionally used the mark knowing it was a counterfeit as the term counterfeit is defined in 15 U.S.C. § 1116." *Id*. at 911. Section 1116 defines "counterfeit mark" as "a mark that is registered on the principal register in the United States Patent and Trademark Office for such goods or services sold, offered for sale, or distributed and that is in use, whether or not the person against whom relief is sought know such mark was so registered." 15 U.S.C. § 1116(d)(1)(B)(i). "Elsewhere, the statute provides additional clarification, defining 'counterfeit' as 'a spurious mark which is identical with, or substantially indistinguishable from, a registered mark.' 15 U.S.C. § 1127." *Skreened Ltd*., 16 F. Supp.3d at 911 (quoting *Laukus v. Rio Brands, Inc*., 391 F. App'x, 416, 425 (6th Cir. 2010)).

7

Here, the complaint identifies Plaintiffs' ownership of and exclusive rights to use their respective trademarks at issue. (Doc. No. 1, Compl., Sec. A, ¶ 6 and Sec. B., ¶ 5). The complaint further alleges that 111 Pit Stop, Inc. used counterfeit reproductions of one or more of Plaintiffs' respective trademarks in commerce without Plaintiffs' permission. (*Id*., Section C, ¶¶ 1-3; Groppe Decl. ¶¶ 13-17). By defaulting, 111 Pit Stop, Inc. has admitted that its use of Plaintiffs' Ray-Ban and Oakley Trademarks is likely to cause confusion among consumers regarding the origin and quality of the goods it offered for sale and sold. *See Chanel, Inc. v. Jermaine Wrice*, No. 5:13-CV-891, 2015 WL 521144, at *4-5 (N.D. Ohio Feb. 9, 2015) (holding that defendant, by defaulting, admitted use of plaintiff's trademarks was likely to cause confusion); *Microsoft v. Sellers*, 411 F. Supp.2d 913, 919 (E.D. Tenn. 2006) ("'Where one . . . produces counterfeit goods in an apparent attempt to capitalize upon popularity of, and demand for, another's product, there is a presumption of the likelihood of confusion.'") (quoting *Procter & Gamble Co. v. Quality King Distribs., Inc.*, 123 F. Supp.2d 108, 115 (E.D.N.Y. 2000)); *see also Microsoft Corp. v. Moss*, No. 1:06-CV-1670-JOF, 2007 WL 2782503, at *5 (N.D. Ga. Sept. 20, 2007) (finding that likelihood of confusion is presumed where a defendant has sold or distributed counterfeit goods). Further, "[a] court may infer that a defendant's infringement is willful from the defendant's failure to defend." *Coach, Inc. v. Cellular Planet*, No. 2:09-cv-00241, 2010 WL 1853424, at *5 (S.D. Ohio May 7, 2010).

Based on the allegations in the complaint, all of which are deemed admitted, Plaintiffs have established a claim against Defendant 111 Pit Stop, Inc. for trademark infringement and counterfeiting pursuant to 15 U.S.C. § 1114. As a result, the Court finds that Plaintiffs are entitled to default judgment against 111 Pit Stop, Inc. for trademark infringement and counterfeiting in violation of 15 U.S.C. § 1114.

Under the Lanham Act, liability extends to "those who facilitate infringement." *Coach, Inc. v. Goodfellow*, 717 F.3d 498, 503, 505 (6th Cir. 2013) (recognizing a cause of action of

contributory liability "under the prevailing standards established by the Supreme Court as applied in other circuits, authorities which we find persuasive."). Contributory liability for trademark infringement may be imposed where a party "knew or had reason to know of the infringing activities and yet continued to facilitate those activities . . . without undertaking a reasonable investigation or taking other appropriate remedial measures." *Id.* at 505 (affirming district court's decision to hold flea market operator contributorily liable for trademark infringement where he continued to supply product or service to vendors he knew or had reason to know were engaging in trademark infringement). A plaintiff cannot state a claim for contributory trademark infringement until the plaintiff has first established underlying direct infringement. S*ee Reliable Carriers Inc. v. Moving Sites, LLC*, 309 F. Supp.3d 473, 478 (E.D. Mich. 2018) (citing *Goodfellow*).

Here, Plaintiffs have established underlying direct infringement. The complaint alleges that Pareshbai Patel, as the owner of the property upon which 111 Pit Stop, Inc. operates, contributed to and facilitated the infringing activities at issue. Specifically, the complaint alleges that Pareshbai Patel permitted and continued to permit the offering for sale and sale of the Counterfeit Product on his premises notwithstanding his actual knowledge, constructive knowledge, or willful blindness, to the infringing activities of Defendant 111 Pit Stop, Inc. (Doc. No. 1, Compl., Section C, ¶ 9). These allegations, deemed admitted by Defendants' default, are sufficient to permit the Court to draw the reasonable inference that Pareshbai Patel is liable for contributory trademark infringement. *See Sprint Solutions, Inc. v LaFayette,* No. 2:15-cv-25959-SHM-cgc, 2018 WL 3097027, at *11 (W.D. Tenn. June 22, 2018) (finding that, after entry of default, the allegations of the complaint were deemed admitted and entering default judgment in favor of plaintiffs on contributory trademark infringement claim); *Habeeba's Dance of the Arts v. Knoblauch*, 430 F.Supp.2d 709, 714 (S.D. Ohio 2006) (imposing liability for contributory infringement on one who

9

"had enough control over [the direct infringer] to have prevented the infringing event from taking place"). As noted above, the court may infer a defendant's infringement is willful from the defendant's failure to defend. *See Coach*, *Inc.*, 2010 WL 1853424, at *5. Consequently, the Court finds that Plaintiffs have established a claim for contributory trademark infringement and are entitled to default judgment against Pareshbai Patel.

Accordingly, Default Judgment pursuant to Rule 55 of the Federal Rules of Civil Procedure will be entered against Defendants.

## IV. Damages

Having determined that Plaintiffs are entitled to default judgment against 111 Pit Stop, Inc. for trademark infringement and counterfeiting and against Pareshbai Patel for contributory trademark infringement, the Court now turns to the issue of damages. Plaintiffs seek a permanent injunction and statutory damages against each Defendant.

### A. Injunctive Relief

The Lanham Act authorizes district courts hearing trademark infringement actions "power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable. 15 U.S.C. § 1116(a)." *CFE Racing Prods., Inc. v. BMF Wheels., Inc.*, 793 F.3d 571, 595 (6th Cir. 2015). A plaintiff seeking a permanent injunction must demonstrate: (1) it has suffered an irreparable injury; (2) remedies at law, such as monetary damages, are inadequate to compensate for that injury; (3) considering the balance of hardship between plaintiff and defendant, a remedy in equity is warranted; and (4) the public interest would not be disserved by a permanent injunction. *See eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).

Here, Defendants' liability has been established. Defendants have infringed and counterfeited Plaintiff's Trademarks. The record demonstrates that Plaintiffs have developed

10

goodwill among the consuming public that would be undermined if Defendants are not prohibited from further infringement. (Doc. No. 1, Compl., Section C, ¶¶ 6, 10, and 11; Groppe Decl. ¶¶ 18-28). In addition to the monetary loss of Plaintiffs resulting from the sale of counterfeit products, Defendants' counterfeit products will create irreparable harm and confusion, particularly because the counterfeit products bear identical markings as authentic trademarked merchandise and are not manufactured to Plaintiffs' quality standards. *See Circuit City Stores, Inc. v. CarMax, Inc*., 165 F.3d 1047, 1056 (6th Cir. 1999) (finding that irreparable injury that cannot be remedied by money damages follows from the likelihood of consumer confusion and risk to plaintiffs' reputation) (citing *Wynn Oil Co. v. Am. Way Serv. Corp*., 943 F.2d 595, 608 (6th Cir. 1991)).

Further, Defendants willfully infringed the trademarks. Such willful conduct demonstrates a likelihood that Defendants would continue to harm Ray-Ban and Oakley's Trademarks if the Court declined to issue an injunction. *See Luxottica Grp. S.p.A. v. Casa Los Martinez Corp*., No. 1:14–cv–22859–JAL, 2014 WL 4948632, at *3 (S.D. Fla. Oct. 2, 2014). "It is in the public interest to enforce federal trademark laws and to prevent consumers from being misled regarding the origin of products bearing" Plaintiff's Trademarks. *See Chanel*, 2015 WL 521144, at *9. Because Defendants have not appeared and defended this action, it is unknown whether they face hardship as a consequence of being enjoined from violating the Lanham Act. Plaintiffs, on the other hand, have demonstrated that they will continue to suffer from lost income and damage to the reputation and goodwill of their trademarks if Defendants are not permanently enjoined from their illegal conduct.

The Court concludes that the balance of these considerations weighs in favor of granting a permanent injunction. *See Sprint Solutions, Inc.,* 2018 WL 3097027, at *11 (finding that a permanent injunction is appropriate given Defendants' scheme of unlawfully acquiring, unlocking, and selling Sprint telephones outside the Sprint wireless network); *Chanel, Inc.*, 2015 WL 521144,

11

at *8-9 (permanently restraining defendants, who had "infringed and counterfeited Plaintiffs' Respective Marks at both their physical and on-line business locations even when defendants were on notice of their unlawful conduct," from infringing plaintiffs' trademarks); *see also Luxottica Grp. S.p.A.*, 2014 WL 4948632, at *6-7 (granting default judgment and entering a permanent injunction after finding that infringer had "willfully and intentionally used counterfeit marks as defined in Section 1116(d)(1)(B) of Title 15.").

### B. Damages

Plaintiffs argue that, because Defendants have failed to respond to Plaintiffs' allegations, it is impossible to determine actual damages in this case. (Doc. No. 28 at 7). As a result, Plaintiffs seek statutory damages under the Lanham Act. (*Id*. at 7-8).

"The Lanham Act authorizes an award of statutory damages in lieu of actual damages." *Coach, Inc.*, 2010 WL 1853424, at *5. "[S]tatutory damages are appropriate in default judgment cases because the information needed to prove actual damages is within the infringers' control and is not disclosed." *Microsoft v. McGee*, 490 F.Supp.2d 874, 882 (S.D. Ohio 2007). The amount of statutory damages awarded to a plaintiff within the range provided does not depend on actual damages. Under the Lanham Act, a plaintiff is entitled to "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just . . . ." 15 U.S.C. § 1117(c)(1). Where the use of the counterfeit mark was willful, a plaintiff may receive "not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(2).

The complaint and the Declaration of Jason Groppe demonstrate that Defendants were willfully and intentionally selling and trafficking in counterfeit merchandise bearing Plaintiffs' trademarks. In addition, Plaintiffs have spent substantial money and resources in marketing,

12

product research and development, the manufacture of their high-quality products. (*See* Compl. at Sec. A. ¶ 5, Sec. B, ¶ 4; Groppe Decl. ¶¶ 6 and 8). By counterfeiting Plaintiffs' trademarks, Defendants benefited directly from Plaintiffs' substantial expenditures of resources and time in the creation, development, and production of its trademarks and the goodwill associated with those trademarks. (*See* Compl. Sec. C, ¶¶ 5, 6 and 10). It is undisputed that Defendants have promoted, distributed, advertised, offered for sale, or sold sunglasses bearing marks that were in fact counterfeits of one or more of Plaintiffs' trademarks. (Groppe Decl. at ¶¶ 13-17). It is further undisputed and admitted through their default that Defendants intentionally copied Plaintiffs' trademarks to benefit from Plaintiffs' reputation as a leader in high-quality sports eyewear. As explained in Mr. Groppe's Declaration, Plaintiffs' investigator observed counterfeit Ray-Ban and Oakley trademarked sunglasses being offered for sale by 111 Pit Stop, Inc. and Pareshbai Patel. (Groppe Decl. ¶¶ 13-17).

In order to sanction Defendants for their willful infringement, and to deter others from future infringing behavior, Plaintiffs are entitled to seek statutory damages of up to $2,000,000 for each trademark willfully infringed. 15 U.S.C. § 1117(c)(2). However, Plaintiffs only seek statutory damages available for non-willful trademark infringement. Specifically, Plaintiffs seek statutory damages in the amount of $100,000 per counterfeit mark per type of counterfeit good infringed.

Plaintiffs' suggested award falls well within the permissible statutory range under 15 U.S.C. § 1117(c). A statutory damage award of $100,000 per counterfeit mark infringed is significantly less than the maximum authorized award of $2,000,000 for willful behavior. In fact, it represents 5% of the maximum authorized award under 15 U.S.C. § 1117(c) and, in the Court's opinion, should be adequate to deter Defendants and others from continuing to counterfeit or otherwise infringe Plaintiffs' trademarks, compensate Plaintiffs, and punish 111 Pit Stop, Inc. and Pareshbai Patel—all stated goals of 15 U.S.C. § 1117(c).

Courts in the Sixth Circuit have previously permitted awards of $100,000 per infringement in similar cases. *See Coach, Inc. v. Chouman's Ass'n, Inc.*, No. 11-cv-15665, 2012 WL 6705412, at *3 (E.D. Mich. Dec. 26, 2012) (granting default judgment and awarding $1,500,000 in statutory damages where defendants willfully infringed ten trademarks, or $150,000 per infringement); *Coach, Inc.*, 2010 WL 2572113, at *3 (granting default judgment and awarding statutory damages in amount of $100,000 per infringement where defendants willfully sold counterfeit Coach products); *see also Luxottica Grp. S.p.A.*, 2014 WL 4948632, at *6 (granting default judgment and awarding $200,000 in statutory damages per Ray-Ban mark infringed). Thus, the Court finds it appropriate to grant Plaintiffs' request and award statutory damages of $100,000 per type of counterfeit mark per type of counterfeit good infringed (4 Ray-Ban Trademarks @ $100,000 + 6 Oakley Trademarks @ $100,000), for a total award of $1,000,000 in statutory damages.

## V. Conclusion

As set forth above, Plaintiffs have established a claim for trademark infringement and counterfeiting pursuant to 15 U.S.C. § 1114 and are entitled to default judgment against Defendant 111 Pit Stop, Inc. Furthermore, Plaintiffs have established a claim for contributory trademark infringement under the Lanham Act and are entitled to default judgment against Pareshbai Patel. Accordingly, the Court will grant Plaintiffs Luxottica Group, S.p.A. and Oakley, Inc.'s Motion for Entry of Default Judgment Pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure as to Defendants 111 Pit Stop, Inc. and Pareshbai Patel. (Doc. No. 27).

An appropriate order will be entered.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE